# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA HERNANDEZ DE MUNOZ, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:18-cv-00483-SAB <br><br> ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL <br><br> (ECF Nos. 17, 18) |

## I.

## INTRODUCTION

Plaintiff Alicia Hernandez De Munoz ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from carpal tunnel syndrome. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 10.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on May 30, 2014. (AR 72, 73.) Plaintiff's applications were initially denied on December 12, 2014, and denied upon reconsideration on March 25, 2015. (AR 96-99, 102-106.) Plaintiff requested and received a hearing before Administrative Law Judge Mary P. Parnow ("the ALJ"). Plaintiff appeared for a video hearing on December 15, 2016. (AR 41-.) On February 22, 2017, the ALJ found that Plaintiff was not disabled. (AR 21-35.) The Appeals Council denied Plaintiff's request for review on February 13, 2018. (AR 2-4.)

## A. Hearing Testimony

Plaintiff appeared for the video hearing with her attorney and testified with the assistance of a Spanish language interpreter. (AR 42-53.) Plaintiff was 55 years old on the date of the hearing. (AR 43.) Plaintiff attended school in Mexico and completed the third grade. (AR 44.) Plaintiff lives in a house with her husband and adult daughter. (AR 46-47.) Plaintiff has difficulty speaking English and cannot read or write in English. (AR 47.) She is right handed. (AR 47.)

Plaintiff worked packing vegetables at Bolthouse Farms. (AR 44.) Plaintiff stopped working at Bolthouse Farms because her hands were bad and she could not saw anymore. (AR 45.) She also worked seasonally in the fields packing grapes. (AR 45.) During the season, Plaintiff would work eight hours a day five days a week. (AR 45.) She was told that she could not do repetitive work but does not remember what she did after that. (AR 46.) When she was packing grapes, she was able to take breaks while waiting for the grapes to get there and that enabled her to work. (AR 46.) She had surgery on her right hand and did not return to work after that. (AR 46.) She was given some training in cake decorating as part of her Workers' Compensation claim. (AR 47.) She completed the program but did not work as a cake decorator. (AR 48.)

Plaintiff is unable to work because her hands have gotten worse and her back and knees

hurt, but the major problem is her back. (AR 48.) She wears a brace on her right wrist and wears it especially when she is driving so that her wrist does not hurt. (AR 48.) She does not use a brace for her right wrist. (AR 48.) Plaintiff has a lot of problems with her left hand and has informed her doctor but he is just treating her back. (AR 48.)

Plaintiff is able to stand one and a half to two hours and can walk for one hour. (AR 49.) She would then need to rest for 15 minutes. (AR 49.) Plaintiff can lift a gallon of milk using two hands. (AR 49.) She needs to use two hands to lift a coffee cup or it will fall. (AR 49.) She has a weak grip and trouble holding onto things with both of her hands. (AR 49-50.) Her fingers regularly get numb. (AR 50.) Her back is hurting but they have not been able to figure out why. (AR 51.)

Plaintiff drives to the store, to meetings, and to appointments but it requires a lot of effort with her left hand and her back bothers her. (AR 50.) Plaintiff is unable to get clothes out of the dryer and cannot carry a load of clothes. (AR 50.) She can wash simple dishes but cannot hold or wash a heavy pot. (AR 50.) Plaintiff has trouble cooking and her husband helps her. (AR 51.) Her husband does the yardwork. (AR 51.)

Plaintiff is a Jehovah Witness and goes to weekly meetings on Wednesdays at 7:00 p.m. and Sundays at 1:00 p.m. (AR 51.) The meetings are 45 minutes to 1 hour long. (AR 51.) She has trouble sitting through the meetings and gets up to go to the bathroom. (AR 51.) Plaintiff goes door-to-door sometimes but other times they just give her the house numbers and she drives door-to-door. (AR 51.)

Plaintiff went on a trip to Mexico with her husband. (AR 51.) While her husband was in Mexico, he had an accident and ended up in the hospital. (AR 51-52.) She went to see him while he was there and came back in an airplane when he was able to travel. (AR 52.)

Plaintiff had a Workers' Compensation claim that settled for around $17,000.00. (AR 52-53.) She does not currently have an outstanding Workers' Compensation claim. (AR 52.)

Joel Greenberg, a vocational expert ("VE"), also testified at the hearing. (AR 53-56.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2016.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 19, 2014.
- Plaintiff has the following severe impairment: carpal tunnel syndrome.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is limited to frequent overhead reaching with right upper extremity; frequent climbing of ladders, ropes, or scaffolds; and no more than frequent handling, feeling, and fingering.
- Plaintiff is capable of performing past relevant work as a farm worker. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.
- Plaintiff has not been under a disability as defined in the Social Security Act from March 19, 2014 through the date of this decision.

(AR 29-34.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The

Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm

---

regulations are generally the same for both types of benefits. Therefore, only a reference to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq., or the supplemental security regulations, 20 C.F.R. § 416.901 et seq., shall be provided.

5

simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons to reject the opinion of Dr. Lewis that she needed find a job that does not require repetitive use of her hands on a consistent basis. Plaintiff contends that in Workers' Compensation terms, repetitive means that she has lost fifty percent of her pre-injury capacity and the ALJ did not provide any reasons for rejecting Dr. Lewis' opinion that Plaintiff was unable to repetitively use her hands on a consistent basis.

The Commissioner states that the ALJ considered Dr. Lewis' opinion and that the ALJ did not reject his opinion. The Commissioner argues that Dr. Lewis' notes are a medical finding that the ALJ translated into the residual functional capacity assessment. The Commissioner contends that Dr. Lewis' use of repetitive and consistent are not terms that reflect Social Security's consideration of the frequency of work-related tasks. The Social Security framework defines frequency using a scale of Not Present, Occasionally (up to one-third of the time), Frequently (from one-third to two-thirds of the time), and Constantly (two-thirds or more of the time). The Commissioner contends that the the ALJ translated Dr. Lewis' opinion into the concrete, functional restriction of frequent handling, fingering and feeling.

### A. The ALJ Did Not Improperly Reject Dr. Lewis' Findings

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-

treating physicians are afforded less weight than those of treating physicians. <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. <u>Thomas</u>, 278 F.3d at 957.

On March 31, 2015, Dr. Marshall S. Lewis provided a primary treating physician's comprehensive orthopedic evaluation and request for authorization in Plaintiff's Workers compensation case. (AR 446-452.) Plaintiff was seen for a follow-up on her industrial injury of December 13, 2006. (AR 447.) Plaintiff reported that she still had a lot of pain. (AR 447.) Dr. Lewis considered an October 20, 2014 report from Dr. Pechman that found Plaintiff was a qualified injured worker. (AR 447.) Dr. Pechman recommended further therapy and medications for Plaintiff's right shoulder. (AR 447.) Dr. Pechman discussed that Plaintiff's right wrist was permanent and stationary and her left wrist had non-operative care. (AR 447.) EMG/nerve conduction studies on February 28, 2007 and January 29, 2008 indicated that Plaintiff had mild bilateral carpal tunnel syndrome. (AR 447.) A September 25, 2008 EMG/nerve conduction study was normal. (AR 447.) A June 30, 2009 EMG/nerve conduction study showed minimal bilateral carpal tunnel syndrome. (AR 447.) Dr. Pechman found that Plaintiff had a whole person impairment of fourteen percent. (AR 447.)

An October 20, 2014, report from Dr. Pechman stated that the current EMG/nerve conduction study substantiates left hand carpal tunnel syndrome and recommended that therapy be left open for medications, injections, and splinting with possible carpal tunnel release surgery. (AR 447.)

On examination, Dr. Lewis found that Plaintiff's scars were well healed. (AR 448.) Her range of motion was well-preserved, although she did have some findings of residual carpal tunnel symptomology bilaterally. (AR 448.) Plaintiff was diagnosed with "1. Degeneration of thoracic or thoracolumbar intervertebral disc. 2. Disorder of bone and cartilage. 3. Carpal tunnel syndrome. 4. Sprain/strain cervical spine. (AR 448.) Dr. Lewis recommended that Plaintiff should be using a warm-water type of treatment and that she get into a warm-water pools and do exercises which would be beneficial for her whole body, as well as her upper extremities. (AR 449.) As to work status, Dr. Lewis found that Plaintiff is a qualified injured worker and needed to find a job that did not require repetitive use of her hand on a consistent basis. (AR 449.)

Although the ALJ considered the findings of Dr. Lewis (AR 32), he did not assign any weight to the opinion or reject the findings. Therefore, the Court finds that the issue here is whether Dr. Lewis' opinion is consistent or inconsistent with the residual functional capacity finding.

Plaintiff argues that Dr. Lewis's finding that she cannot do work requiring repetitive use of her hands is inconsistent with the finding that she is able to do frequent handling, fingering, and feeling. However, Dr. Lewis did not restrict Plaintiff to no repetitive use of her hands. He found that Plaintiff could not consistently do repetitive movement with her hands. The terms used and the manner is which work is categorized is different under the Social Security regulations than it is under California's Workers Compensation scheme. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Booth v. Barnhart, 181 F.Supp.2d 1099, 1104 (C.D. Cal. 2002). Nevertheless, the ALJ is required to consider the Workers Compensation medical opinions just as he would any other medical opinion. Booth, 181 F.Supp.2d at 1105.

Plaintiff cites to Sanchez v. Berryhill, No. ED CV 16-1621-SP, 2017 WL 5508515 (C.D. Cal. Nov. 16, 2017), to argue that no repetitive use would be consistent with occasional use. However, in Sanchez, while the doctor stated that the claimant should avoid repetitive postural activities, at the hearing the attorney translated no repetitive to occasional in presenting the hypothetical to the VE. Id. at *6. The ALJ had given great weight to the doctor's opinion that

the claimant should avoid repetitive postural activities and it could be inferred that the ALJ found this to be equivalent in Social Security terms to limiting the claimant to frequently performing such activities. Id. However, nowhere in the decision did the ALJ make the translation nor did he offer any support for the accuracy of the translation. Id. The court considered that the Ninth Circuit had suggested that the repetitive is quantitatively different than occasional citing to Gardner v. Astrue, 257 F.App'x. 28, 30 n.5 (9th Cir. 2007).

In Gardner, the ALJ presented hypothetical questions to the VE that included constant, repetitive manipulation and frequent, not constant manipulation. Gardner, 257 F.App'x at 30. The VE opined that a person who could not perform constant manipulation would be precluded from the jobs in question, but that an individual who could perform frequent manipulation could perform two of the jobs. Id. The residual functional capacity for the claimant included no repetitive use of the hands for manipulation, but the ALJ never provided a hypothetical to the VE that included no repetitive use of the hands. Id. The court found that it was not clear if this restriction would preclude the work activity identified. Id. Because the ALJ provided incomplete and inaccurate hypothetical questions the VE's testimony was without evidentiary value to support the ALJ's findings and the action was remanded. Id.

In a footnote the court stated,

> Although we do not base our holding on this point, we note that "repetitively" in this context appears to refer to a qualitative characteristic—i.e., how one uses his hands, or what type of motion is required—whereas "constantly" and "frequently" seem to describe a quantitative characteristic—i.e., how often one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner frequently, or it might require him to use his hands in a repetitive manner constantly. The VE's testimony suggests that someone who cannot not use his hands constantly in a repetitive manner, but can use his hands frequently in a repetitive manner, could perform the jobs of electronics worker and marker. The ALJ's RFC finding, however, suggested that Gardner should not use his hands in a repetitive manner at all, whether constantly or frequently. Under this interpretation of the relevant terms, the ALJ's step-five finding that Gardner could perform the jobs of electronics worker and marker would be erroneous. The ALJ should clarify his use of these terms on remand.

Id. at 30 n.5.

In Macapagal v. Astrue, No. C07-03706 HRL, 2008 WL 4449580 (N.D. Cal. Sept. 29, 2008), the Commissioner made a similar argument to that presented here, that considering the

Social Security framework's frequency description of Not Present, Occasionally (up to one-third of the time), Frequently (from one-third to two-thirds of the time), and Constantly (two-thirds or more of the time), the ALJ's finding that avoiding repetitive use of the hands on a consistent basis is consistent with limiting handling, feeling, and fingering to frequently. In Macapagal, the claimant was challenging that the step five finding was not supported by the record because the hypotheticals presented to the VE did not accurately reflect the claimant's limitations and restrictions. Id. at *2. The court found that the term " 'repetitive' seems to describe the manner in which a person uses her hands and the type of action required, whereas the term 'occasional' reflects how often a person uses her hands in a particular manner."[3] Id. at *4.

Plaintiff reads the ALJ's findings in this instance to be inconsistent with that of Dr. Lewis, but she is conflating the meaning of repetitive and frequent. Under the agency's regulations "Frequent" means occurring from one-third to two-thirds of the time. SSR 83-10. While the agency does not define repetitive, as discussed above the meanings of frequent and repetitive in the context of social security are distinct. See LeFevers v. Comm'r, 476 F.Appx. 608, 611 (6th Cir.2012) ("In ordinary nomenclature, a prohibition on 'repetitive' lifting does not preclude a capacity for 'frequent' lifting," and non-Agency doctor's use of term "repetitive" was not inconsistent with RFC for light work); McCarter v. Colvin, No. 13-2238-SAC, 2014 WL 4908990, at *3 (D. Kan. Sept. 30, 2014) (finding that "no repetitive" use and "frequent" use are synonymous).

The ALJ considered that Dr. Lewis opined that Plaintiff should avoid repetitive use of her hand on a consistent basis. The ALJ also considered that Dr. Lewis examined Plaintiff on February 17, 2015 and his examination showed well preserved range of motion in the bilateral

---

[3] Plaintiff argues that in Workers' Compensation terminology "repetitive" means that the individual has lost 50% of their pre-injury capacity. (ECF No.17 at 6.) Plaintiff cites to Brooks v. Astrue, No. CV 11-8645-JEM, 2012 WL 2373628 (C.D. Cal. June 22, 2012), in which the court found that in Workers' Compensation terms the preclusion to repetitive use of the shoulder and elbow meant the doctor determined that she could use shoulder and elbow less than fifty percent of the time. Id. at *5. However, as discussed above, repetitive refers to how the shoulder and elbow are used, not how often they are used in that manner. Gardner, 257 F.App'x at 30 n.5. Therefore, the Court finds that the repetitive in the Workers' Compensation context does not equate to the amount of time that the claimant can use the extremity, but addresses the how the extremity can be used. For this reason, the Court does not find those cases holding that a limitation addressing repetitive movement in a Worker's Compensation case means that the individual can only perform the action fifty percent of the time to be persuasive authority.

wrists and adequate grip strength. (AR 32, 454.) On March 31, 2015, Plaintiff saw Dr. Lewis who found that her examination results had not changed. (AR 32, 448.) Although Plaintiff argues that Dr. Lewis's statement that she cannot do a job requiring repetitive use of the hands on a consistent basis is inconsistent with the ALJ's finding that she can frequently finger, handle and feel, the ALJ could reasonably interpret the finding to allow frequent fingering, handling and feeling. Dr. Lewis did not address the frequency with which Plaintiff was able to use her hands, but found that she should not consistently perform repetitive motion. The ALJ's interpretation that Dr. Lewis's limitation to no repetitive use of her hands on a consistent basis would allow her to use her hands frequently under the social security regulations is reasonable. Everett v. Astrue, No. 1:10-CV-1831 LJO-BAM, 2012 WL 1965958, at *14 (E.D. Cal. May 31, 2012); Jimenez v. Colvin, No. CV 13-8676 SS, 2014 WL 5464949, at *13 (C.D. Cal. Oct. 28, 2014). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954. Because the ALJ's interpretation of Dr. Lewis's opinion that Plaintiff was capable of performing frequent handling, fingering, and feeling is reasonable, this Court may not second guess the ALJ's opinion. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The Court finds that the ALJ did not improperly reject Dr. Lewis's findings.

**B.     Whether the RFC is Supported by Substantial Evidence**

Plaintiff argues that the VE testified that a limitation against repetitive use of the hands would preclude all work. The Court construes this argument to contend that the residual functional capacity ("RFC") assessment is not supported by substantial evidence in the record. The Court therefore considers whether there is substantial evidence in the record to support the ALJ's finding that Plaintiff is able to perform frequent handling, feeling, and fingering.

A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison, 759

F.3d at 1011. At step four the RFC is used to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. Id. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956. However, the residual functional capacity findings need not be identical to the relevant limitations but must be consistent with them. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010).

The ALJ found that due to the repetitive nature of her job duties, Plaintiff had developed bilateral carpal tunnel syndrome. (AR 31. 3F, 4) She underwent right carpal tunnel release with a satisfactory result on April 7, 2014.[4] (AR 31. 5F 103) She was found to be recovering from surgery as expected. (AR 317.)

On May 6, 2014, Dr. Lewis examined Plaintiff and noted that Plaintiff had not gone to therapy, apparently through a miscommunication. (AR 309.) She had some tenderness with range of motion reasonably well preserved and poor grip strength. (AR 309.)

On June 10, 2014, Dr. Lewis noted,

> Examination shows the patient indeed does have tenderness of the flexor musculature of the forearm most notably to the fifth digit. No frank muscle spasm at this time. Tinels testing at Guyons canal is negative. There is no visible muscle atrophy. The patient has no intrinsic muscle weakness of the hand. The carpal tunnel surgery site is well healed, negative Tinels testing. Range of motion is reasonably well preserved. It does cause pain into the forearm with stretching of the flexor tendons.

(AR 300-301.)

On July 15, 2014, Dr. Lewis noted that Plaintiff flinched and grimaced during palpation to her hand. (AR 291.) Plaintiff's grip strength while "testing manually appears to be adequate and equal to the population norm however with 5-position Jamar grip strength testing done twice and findings to the right hand indicated "most likely magnification or malingering has to be entertained." (AR 291-292.)

On August 8, 2014, Plaintiff failed to keep an appointment for an agreed upon

---

[4] The Court notes that Plaintiff underwent surgery on March 19,2014, and was seen for post-operative examination on April 7, 2014. (AR 317, 325.)

12

examination with Dr. Pechman. (AR 414.)

On August 26, 2014, Plaintiff saw Dr. Lewis who found that she had diminished grip on the right compared to the left side of 4+/5+ without any impingement of range of motion. (AR 282.) She had no visible hand atrophy and no weakness of the intrinsic muscles in the hand. (AR 282.)

Other than tenderness to palpation, Plaintiff had a normal examination by Dr. Pechman on October 20, 2014, and grip strength testing indicated suboptimal effort. (AR 31, 364-368.) Dr. Pechman found

> With regard to the right wrist she reflects mainly ulnar symptoms with pain in ulnar digits 4 and 5 and some pain in the third digit. There are no symptoms in her thumb or index finger. As noted she is permanent and stationary at this point and indicates surgery was not helpful. Therapy and medications are reasonable. I recommend non-operative care. I can repeat her EMG/nerve conduction studies as her symptoms are more ulnar than median nerve at this point.
>
> With regard to the left wrist the patients complaints are atypical for carpal tunnel syndrome and her tests are pretty old and at this point she certainly has more ulnar than median nerve symptoms. I would suggest non-operative care in this case as her symptoms have a mismatch with her EMG/nerve conduction studies. While I can repeat the EMG/nerve conduction studies, I would recommend non-operative care of therapy and medications. The disparity between the symptoms and the testing causes me to think she should have non-operative care.
>
> The 2/28/07 and 1/29/08 EMG/nerve conduction studies indicated mild bilateral carpal tunnel syndrome. As noted the 9/25/08 EMG/nerve conduction study was normal and the 6/30/09 EMG/nerve conduction studies showed minimal bilateral carpal tunnel syndrome.

(AR 406.)

On November 24, 2014, Dr. Lewis noted that Plaintiff has a weak grip with pain to the same. (AR 274.)

Plaintiff saw Dr. Lewis on January 5, 2015, and he found that her grip strength remained poor. (AR 264.)

Plaintiff had neurological testing on February 3, 2015, including an EMG and nerve conduction study. (AR 31, 331-333.) She was found to have mild left carpal tunnel syndrome and median sensory latencies through the right carpal tunnel that were borderline normal. (AR 32, 333.)

On February 17, 2015, Plaintiff was examined by Dr. Lewis and found to have well

preserved range of motion and adequate grip strength. (AR 32, 454.) On this same date, Dr. Pechman stated that he had reviewed February 3, 2015 report and there was no reason to change his prior findings. (AR 32, 342-351.)

Plaintiff saw Dr. Lewis again on March 31, 2015 and examination findings remained the same. (AR 32, 448.)

The ALJ noted that Plaintiff did complain of left-hand pain on March 11, 2016. (AR 32, 518.) She was found to have mild pain with motion. (AR 521.) The ALJ also reviewed treatment notes from March 12, 2014 through November 21, 2016, which revealed no complaints of carpal tunnel related symptoms. (AR 32-33, 492-581.)

The ALJ considered the opinion of Dr. Wagner who conducted an internal medicine consultative examination of Plaintiff on November 20, 2014. (AR 33, 249-253.) Dr. Wagner noted that Plaintiff used a splint on her right wrist which appeared to be helpful after surgery. (AR 251.) Plaintiff was found to have positive Tinel's on the left, but not on the right wrist. (AR 33, 252.) Plaintiff had good dexterity and was able to easily oppose fingertips to thumb tips and pick up a paperclip with each hand. (AR 33, 252.) Her grip strength was 4+/5 in the right hand and 5-/5 in the left hand. (AR 252.) Dr. Wagner noted that Plaintiff complained of some pain and numbness in the ulnar distribution primarily and some pain and numbness in the left ulnar distribution and Plaintiff was diagnosed with carpal tunnel. (AR 33, 252.) Dr. Wagner opined that Plaintiff could frequently perform manipulative activities. (AR 33, 253.)

Here, Dr. Wagner examined Plaintiff and made independent findings in assessing Plaintiff's functional capacity. He found that Plaintiff had some diminished grip strength and complained of pain, but he opined that she was able to frequently perform manipulative activities. The ALJ gave significant weight to this opinion finding that it was consistent with the record as whole, supported by the relevant evidence, and because Dr. Wagner had program knowledge. (AR 33.) Dr. Wagner's opinion is substantial evidence in support of the ALJ's findings that Plaintiff is able to frequently finger, handle, and feel. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The VE was asked if an individual who was limited to only frequently handling,

fingering and feeling would be able to perform Plaintiff's past jobs and the ALJ stated that she would. (AR 54-55.) As the hypothetical provided to the VE included the limitations in Plaintiff's RFC, the Court finds no error in the finding that Plaintiff is able to perform her past relevant work. Thomas, 278 F.3d at 956.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in considering the opinion of Dr. Lewis or by finding that Plaintiff was capable of her past relevant work.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Alicia Hernandez De Munoz. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __March 15, 2019__

UNITED STATES MAGISTRATE JUDGE